**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **RICHARD LOUIS SLAYDON,** | § | |
| **TDCJ-CID NO. 1480138** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-08-0075** |
| | § | |
| **ERIC KINDLEY, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Richard Louis Slaydon, a former inmate of the Bartlett State Jail, filed a civil rights complaint under 42 U.S.C. § 1983 against employees of Court Services Inc. and Victoria County Sheriff Thomas Michael O'Connor. Slaydon claims that the defendants were deliberately indifferent to his medical needs while he was being transported from one jail to another. After reviewing the pleadings, which include Slaydon's More Definite Statement, this Court has determined that this action should be **DISMISSED** because it lacks an arguable legal basis.

I. Claims and Allegations

In addition to Sheriff O'Connor, Slaydon named Court Services Inc. President Eric Kindley and two of his employees, Delmer Sexton and James Sexton, as defendants. Slaydon claims that the defendants were deliberately indifferent to his serious medical needs by denying him a prescribed diet and failing to provide proper medical treatment for a broken jaw when he was extradited from Poplarville, Mississippi to Victoria, Texas. Slaydon claims in his Original Complaint (Dkt. No. 1) that his hands and feet were shackled for five days and five nights while he rode in a van with no restroom facilities. He also complains that he was forced to eat regular food in violation of the explicit instructions given regarding his condition and that he was not given any pain medication or antibiotics

for his injured jaw.  (Dkt. No. 1 at 5.)  Slaydon seeks $ 5,000,000.00 in monetary damages.  (*Id.* at 4.)

In his court ordered More Definite Statement (Dkt. No. 11), Slaydon states that he broke his jaw when he slipped and fell during an altercation with other inmates at the Pearl River County Criminal Justice Center located in Poplarville, Mississippi.  (*Id.* at 10–11.)  The injury happened on or about March 18, 2007. (*Id.* at 12.)  He says that he asked to be taken to a doctor at the nearby Pearl River County Hospital but his request was refused, and it was nearly a week before he saw Mrs. Rita, the "practitioner"[1] at the jail. (*Id.* at 10.) When Mrs. Rita finally saw him, she ordered that he be taken to the hospital for x-rays. The x-rays revealed that Slaydon suffered a  jaw fracture with a complete separation, and Mrs. Rita recommended that he be taken to the emergency room for treatment. (*Id.* at 12–13.) Dr. Neil Solomon, another radiologist located in Hattiesburg, Mississippi, verified the diagnosis on April 13, 2007. (*Id.* at 13.)  Despite the doctors' findings, Slaydon was not hospitalized but was treated at the jail where he was given medication and prescribed a soft food diet.

In the meantime, Sheriff O'Connor contracted with Court Services Inc. to transport Slaydon to Victoria, Texas pursuant to an order by the 377th State District Court of Victoria County.  (*Id.* at 6.) Delmer and James Sexton were the Court Services employees who were operating the van that picked up Slaydon on May 3, 2007.  (*Id.* at 3–5, 15.) Slaydon alleges that Scott, a guard, told the Sextons that Slaydon had been prescribed a soft food diet to avoid chewing. (*Id.* at 15–16.)

Although Slaydon was to be transported to Victoria, which is only a day's drive from Poplarville, Mississippi, the Court Services van was also carrying detainees from other states destined for various jurisdictions. (Dkt. No. 11 at 14.) Consequently, Slaydon had to travel to Florida, to New Jersey, and then to Illinois via Canada (by mistake) before he finally arrived at his intended destination

---

1. The court interprets the plaintiff's term "practitioner" to mean either a nurse practitioner or physician's assistant.

in Victoria, Texas six days later on May 9, 2007. (*Id.* at 14–15.)

Despite the instructions, Slaydon was fed hamburgers, french fries, sausage biscuits, hashbrowns, fried chicken, okra, and mashed potatoes. (Dkt. No. 11 at 15). He complains that the Sextons showed reckless disregard by failing to adhere to the prescribed diet. (*Id.* at 5.) He also complains that he was denied pain medication while he was being transported. (Dkt. No. 1 at 5; Dkt. No. 11 at 23.) Slaydon argues that the defendants violated his rights by failing to inform themselves fully about his condition. (Dkt. No. 11 at 24.)

Slaydon was never hospitalized for his jaw injury. (Dkt. No. 11 at 22–23.) However, he alleges that he suffered a serious infection, which required an antibiotic treatment that lasted three and one-half weeks, and that his face was disfigured for approximately six months. (*Id.* at 18.) He also claims that his teeth do not come together evenly because his jaw is not properly aligned and that he has suffered mentally and emotionally as a result of the incident. (*Id.*)

Slaydon also claims that he was denied the ability to attend to his basic hygiene needs for five days due to the deprivation of showers and restroom facilities. (Dkt. No. 1 at 5). Slaydon complains that he was forced to urinate in bottles and did not have a place to sleep. (*Id.*) He also complains that he was not given the opportunity to exercise while he was being transported to Victoria County. (Dkt. No. 11 at 23.) Slaydon seeks $ 5,000,000.00 in monetary damages. (Dkt. No. 1 at 4.)

## II. <u>Analysis</u>

To state a claim under section 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008), *quoting Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir.

2000).  In asserting a claim regarding denial of attention to medical or health needs to a prisoner, the plaintiff must present facts which show that the defendant was deliberately indifferent to a condition which posed a risk of serious bodily injury to the plaintiff.  *Estelle v. Gamble*, 97 S.Ct. 285, 292 (1976). The plaintiff must show that the defendant had information from which he could infer that the plaintiff was in danger and yet disregarded the danger despite his knowledge.  *Farmer v. Brennan,* 114 S.Ct. 1970, 1979 (1994). The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

Slaydon contends that Sheriff O'Connor is culpable because he did not arrange for an appropriate service to transport him from Poplarville, Mississippi to Victoria, Texas.  (Dkt. No. 11 at 6).  He asserts that the Sheriff placed him in a dangerous environment in violation of his constitutional rights by contracting with Court Services, Inc., to handle his transportation. (*Id.*)   To assert an actionable claim  under section 1983, Slaydon must present "defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Independent School Dist.*, 184 F.3d 439, 443 (5th Cir. 1999), *citing Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).  Naming a government official who had no direct contact with him does not suffice.  *Id.*  Sheriff O'Connor cannot be sued merely because he hired Court Services to transport Slaydon where there is no indication that he personally took part in the actual extradition process.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). All claims against Sheriff O'Connor shall be dismissed because "[t]here is no respondeat superior liability under section 1983." *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996).

The remaining three defendants, Kindley, Sexton, and Sexton, are not government officials.

Instead, they work for a private corporation transporting inmates under contract with various government agencies including the Victoria County Sheriff's Department.  Although defendants in section 1983 actions are usually state, county, or municipal officials, private individuals may be held liable if they are found to have been acting in concert with or pursuant to authority vested in them by state officials.  *See Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (citing *Lugar v. Edmondson Oil Co.,* 102 S.Ct. 2744 (1982); *Morris v. Dillard Dept. Stores, Inc*., 277 F.3d 743, 748–49 (5th Cir. 2001)).  In this action, Sheriff O'Connor authorized Court Services employees to transport Slaydon.  Therefore, they were acting under color of law.  *Id.*  Otherwise, they cannot be held liable under section 1983.

Slaydon complains that he was denied a soft food diet during the trip.  However, he does not clearly define what qualifies as soft food and he admits being fed items such as french fries and mashed potatoes, which could be digested with little or no chewing.  The presence of items that might not have been as easily masticated or were not appropriate would not have established a deliberate indifference claim where there was enough to sustain Slaydon during the trip.  *See Martinez v. Griffin,* 840 F.2d 314 (5th Cir. 1988).  Although the trip took longer than would be expected, Slaydon was able to eat some food and was not denied sustenance over a long enough time period to trigger the Eighth Amendment. *See Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). Further, it was a guard who informed the Sextons about Slaydon's dietary needs and there is no specificity about what foods Slaydon could or could not handle.  Moreover, Slaydon admits in his court ordered More Definite Statement that he does not know exactly what the Sextons were told about his medical condition, and there is no reference to any instructions about the need for medication.  (Dkt. No. 11 at 17.) By complaining that the defendants failed to inform themselves about his condition, Slaydon admits that they did not have actual knowledge of it.  (Dkt. No. 11 at 24.)  Consequently, they

were not sufficiently aware of his condition such that their actions or omissions would constitute deliberate indifference. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) ("[T]he correct legal standard is not whether the jail officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk . . . and responded with deliberate indifference."). At the most, the Sextons' meal selections for Slaydon were poor choices or negligent acts. The Sextons cannot be held liable even if they were grossly negligent in looking after Slaydon's dietary needs. *See Id.* at 645. Their alleged behavior does not manifest a conscious disregard toward Slaydon's serious medical needs where there is no showing that they were notified that they were feeding Slaydon items that were clearly dangerous to his health. *See Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992).

Slaydon's complaint is as much focused on the length of the trip as it is on the food he was given. Although a trip from Mississippi to Texas via Florida, New Jersey, Canada, and Illinois does seem to be extremely circuitous, the facts indicate that Slaydon was only subjected to a cramped and unpleasant ride, and that the defendants did not deprive him of basic necessities in violation of the Constitution. *See Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Slaydon implies in his Original Complaint that he was forced to spend five days and nights trapped in the van. However, he admits in his More Definite Statement that he was able to spend the night in a facility during the trip. (Dkt. No. 11 at 3.) The cramped conditions that Slaydon may have experienced for a five or six day trip does not amount to cruel and unusual punishment that would entitle him to relief. *See Fenlon v. Quaterman*, 350 Fed.Appx. 931, 934 (5th Cir. 2009) ("[M]ere discomfort on bus rides does not trigger the Eighth Amendment.").

All three Court Services employees are entitled to dismissal from this action. In addition, Court Services President Eric Kindley is entitled to dismissal because there is no indication that he was

personally involved in transporting Slaydon. *See Thompson*, 709 F.2d at 382. Like Sheriff O'Connor, Kindley cannot be held liable merely because he exercised supervisory authority over the Sextons. *See Eason*, 73 F.3d at 1327.

### III. Conclusion

For the reasons set forth above, it is hereby **ORDERED** that the civil rights complaint (Dkt. No. 1) filed by Richard Louis Slaydon, TDCJ-CID No. 1544372, is **DISMISSED** as frivolous. 28 U.S.C. § 1915(e).

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas 78711, Fax Number (512) 936-2159; and the Pro Se Clerk's Office for the United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

**SIGNED** on this 25th day of May, 2011.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE